**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANCIS A. ZARRO, JR.,**

                    **Plaintiff,**                    **1:06-CV-1166**
                                                      **(GLS/DRH)**

          **v.**

**ELIOT SPITZER; ERIC DINALLO;**
**TOWN OF COLONIE POLICE**
**DEPARTMENT; SCOTT ANDERSON;**
**REBECCA MULLANE; RHONDA**
**LUSTMAN; RICHARD FRIEDMAN;**
**JOHN SEGALLA; MALCOLM TAUB;**
**JOHN DOE,** _a Detective in the Police_
_Department in the Town of Colonie,_
_New York_**; KEELER MOTOR CARS,**
**INC.; SANDY KEELER; TOM TUREEN;**
**THINK ABOUT IT MAINE;**
**CORNERSTONE PRIVATE CAPITAL;**
_and_ **COUNTRY CLUB FUNDING,**

                    **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Francis A. Zarro, Jr.                NORMAN J. VOOG, ESQ.
                                     90 Grove Street
                                     Suite 104
                                     Ridgefield, CT 06877

**FOR DEFENDANTS:**

Hon. Andrew M. Cuomo                 MICHAEL G. MCCARTIN

New York Attorney General                    STEVEN H. SCHWARTZ
The Capitol                                  Assistant Attorneys General
Albany, NY 12224

Maynard, O'Connor Law Firm                   DANA M. BONIEWSKI, ESQ.
6 Tower Place
Albany, NY 12203

Lewis, Greer Law Firm                        J. SCOTT GREER, ESQ.
510 Haight Avenue, Suite 202
Poughkeepsie, NY 12603

Office of Malcolm S. Taub LLP                 MALCOLM S. TAUB, ESQ.
110 East 59th Street
25th Floor
New York, NY 10022

Burke, Scolamiero Law Firm                   KEVIN P. BURKE, ESQ.
9 Washington Square, Suite 201               THOMAS J. MORTATI, ESQ.
P.O. Box 15085
Albany, NY 12212-5085

Hiscock, Barclay Law Firm                    VINCENT M. CHEN, ESQ.
50 Beaver Street                             WILLIAM A. HURST, ESQ.
Fifth Floor
Albany, NY 12207-2830

Napierski, VanDenburgh Law Firm              SCOTT M. PETERSON, ESQ.
296 Washington Avenue Extension
Albany, NY 12203

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

2

Prisoner and disbarred attorney Francis A. Zarro, Jr. brings this §

1983 action against former New York State Attorney General Eliot Spitzer;[1]

former Deputy Attorney General Eric Dinallo; former Assistant Attorneys

General Scott Andersen, Rebecca Mullane, and Rhonda Lustman;

Investigator Richard Friedman (collectively the "state defendants"); the

Town of Colonie Police Department;  an unknown detective in the Colonie

PD (collectively the "Colonie PD"); John Segalla; Malcom Taub; Sandy

Keeler; Keeler Motor Cars, Inc.; Tom Tureen; Think About It Maine;

Cornerstone Private Capital; and Country Club Funding (collectively the

"individual defendants").  Zarro asserts a variety of constitutional claims

arising out of investigations and prosecutions which led to his incarceration.

Presently pending are all defendants' motions to dismiss under various

provisions of Fed. R. Civ. P. 12, or, in the alternative, Rule 56.  For the

reasons that follow, defendants motions are granted and Zarro's action is

dismissed.

---

[1]The court notes that Zarro has requested that the court enter a default judgment against defendant Spitzer based on allegations that he failed to timely appear.  However, defendant Spitzer has not conceded that he was properly served.  Further the court perceives no prejudice to Zarro in allowing Spitzer's appearance, timely or not.  As such, the court declines to enter a default judgment against defendant Spitzer.  *See, e.g., Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (indicating a preference that litigation disputes be resolved on merits, not by default).

## II. <u>Background</u>

This case has suffered a torturous procedural history which is recited in the courts' prior decision, *Zarro v. Spitzer*, No. 1:06-CV-1166 (GLS/DRH), 2008 WL 4399442, at *1 (N.D.N.Y. Sept. 23, 2008), and will not be repeated in detail here.  Zarro initially filed this § 1983 action on September 29, 2006, asserting a slew of constitutional claims.  (*See* Compl.; Dkt. No. 1.)  Generally, these claims arose out of events surrounding an investigation and prosecution by the New York Attorney General's Office which resulted in Zarro's July 8, 2004 conviction for various crimes.  *See id.*  On December 6, 2006, this court found that Zarro's action was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Dkt. Nos. 8, 9.)  On appeal the Second Circuit affirmed in part, but found that certain of Zarro's claims were not barred by *Heck* because they did not impugn the validity of his conviction.  (*See* Dkt. No. 16.)  On remand Zarro filed a second amended complaint ("complaint") by order of the court, which set forth four broad "counts" composed of those claims which survived *Heck,* and - despite the court's orders - some which did not.  (*See* Am. Compl.; Dkt. No. 22.)  As these counts are generally muddled beyond coherence, the court has elected to simply set them forth as presented in

4

the complaint.

Count one purports to assert claims for abuse of process, unlawful search and seizure and violation of Zarro's right to privacy. *See id.* at ¶¶ 27-29. In this Count, Zarro alleges that in July and August of 2001, defendant Spitzer and "codefendants" obtained search warrants for Zarro's property upon fraudulent affidavits and without statutory authority, exceeded the scope of such warrants and failed to inventory the items seized as required under state law.[2]

Count two of the complaint asserts claims for false imprisonment, abuse of process, wrongfully preventing access to bail and false arrest. *See id.* at ¶¶ 30-47. Zarro alleges that in July of 2003 defendants Spitzer, Dinallo, Anderson and Friedman contacted defendant Tureen, who is the principal of defendant Think About It Maine, and falsely informed him that Zarro was involved in the illicit sale of interests in Tureen's pending casino project. These defendants then caused Maine regulators and media to disseminate this false information to the public.

Zarro's second count also appears to contend that in July of 2003

---

[2]Zarro also contends that defendants withheld exculpatory evidence during his investigation and trial. However, the Circuit affirmed the court's prior ruling that this aspect of Zarro's action was barred by *Heck.* (*See* Dkt. No. 16.)

defendants Friedman, Keeler, Keeler Motor Cars, and the Colonie PD wrongfully caused him to be arrested based on Zarro's alleged failure to pay a car service bill, which he actually paid.  Zarro asserts that he voluntarily turned himself in to the Colonie PD on August 23, 2003.  On the same date, the charges arising from the Keeler incident were "dismissed by the Court ... by adjournment in contemplation of dismissal."  Defendants Anderson and Mullane purportedly informed various courts of the Maine and Keeler incidents in September 2003, September 2004, and December 2005 in an attempt to prevent Zarro's access to bail in various judicial proceedings seemingly related to Zarro's July 8, 2004 conviction.

In count three of his complaint, Zarro asserts claims for malicious prosecution and abuse of process.  *See id.* at ¶¶ 48-63.  Zarro contends that he was prosecuted by the Attorney General's Office without probable cause, statutory authority or jurisdiction for crimes arising out of his purchase of golf property from defendant Segalla and the financing of the property through defendant Country Club Funding.  Zarro alleges that he "was acquitted on both the Segalla and Country Club/Cornerstone charges and on an additional twenty-three counts of a 39 count indictment, on July

6

8, 2004."[3]

Finally, in count four of his complaint Zarro asserts a substantive due process claim for interference with familial relationships.  *See id.* at ¶¶ 64-72.  In this count it is contended that on the opening day of Zarro's trial, March 30, 2004, defendant Mullane stated that Zarro's wife was known to abuse drugs and alcohol.  This caused Zarro's wife to refrain from attending his trial.  Further, on November 18, 2006, Defendant Lustman's sentencing remarks apparently ridiculed Zarro's relationship with his deceased father and other members of his family.

Zarro seeks damages of not less than $500,000,000 and declaratory relief.

### III.  Standard of Review

While the defendants assert their motions to dismiss under various provisions of FED. R. CIV. P. 12, or, in the alternative, Rule 56, the court addresses all motions under the rubric of Rule 12(b)(6).  The standard of review under Rule 12(b)(6) is well established and will not be repeated

---

[3]Zarro also contends that defendant Anderson "through his agents, Defendants Malcom Taub, Esq., and John Segalla, obtained a temporary retraining order and order of attachment" which prevented Zarro from paying legal fees to his criminal counsel.  Again, however, the Circuit affirmed the court's prior finding that this aspect of Zarro's action was barred by *Heck.* (*See* Dkt. No. 16.)

here.  For a full recitation of the standard the court directs the parties to its

decision in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502,

2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008).

As an aside, the court notes its displeasure with Zarro and his

attorney's apparent belief that they are entitled to file unlimited briefs and

discovery materials in response to the pending motions.  Absent a court

order, defendants are entitled one responsive brief on a motion to dismiss.

*See* N.D.N.Y. R. 7.1(b)(1).  The court has neither the resources nor the

inclination to spend hours each week perusing Zarro's latest case updates.

As such, the court has not considered any of the briefs, letters, or other

materials Zarro and his attorney have submitted on the pending motions

subsequent to his initial responses.

## IV.  Discussion

### A.   State Action under § 1983

Initially, the court addresses the individual defendants' contention

that Zarro's claims against them must be dismissed because they are not

state actors subject to § 1983 liability.

§ 1983 provides the mechanism for asserting Constitutional or federal

claims against a defendant acting under color of state law.  *See Spear v.*

*Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).  A private

defendant who has not violated a plaintiff's Constitutional federal rights

while acting under color of state law is not subject to liability under § 1983.

A private party acts under color of state law when he acts "jointly" with state

actors or conspires with state officials.  *See Ginsberg v. Healy Car & Truck*

*Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir. 1999); *Scotto v. Almenas*, 143

F.3d 105, 114 (2d Cir. 1998).  Here, the individual defendants are clearly

private persons and entities.  While Zarro concedes this, he nonetheless

contends that the complaint adequately alleges that all defendants were

involved in a vast state conspiracy against him, such that the claims

against the private defendants survive.  The court cannot agree.

　　To adequately state a conspiracy under § 1983, a plaintiff must

allege: "(1) an agreement between two or more state actors or between a

state actor and a private entity; (2) to act in concert to inflict an

unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.

1999) (internal citations omitted).  "[C]omplaints containing only conclusory,

vague, or general allegations that the defendants have engaged in a

conspiracy to deprive the plaintiff of his constitutional rights are properly

9

dismissed; diffuse and expansive allegations are insufficient, unless

amplified by specific instances of misconduct." *Ciambriello v. County of*

*Nassau*, 292 F.3d 307, 326 (2d Cir. 2002) (internal quotation marks and

citation omitted).

Here, allegations of a conspiracy are virtually nonexistent in Zarro's

complaint.  Indeed, the word conspiracy is never even used.  Instead, the

pleading vaguely refers to the actions of "defendants," and generally

parrots that each defendant is an "agent" of the state.  However, such "bald

assertions and conclusions of law will not suffice" to establish a conspiracy

in the absence of some facts indicating that a conspiracy actually existed.

*Amron v. Morgan Stanley Inc. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir.

2006); *see also In re Elevator Antitrust Litigation*, 502 F.3d 47, 50-51 (2d

Cir. 2007).  Further, in those few instances where the complaint actually

alleges specific instances of individual and state defendants interacting to

Zarro's detriment, there is no indication that such harm was inflicted

pursuant to an implied or express agreement to cause unconstitutional

injury.  As such, Zarro has inadequately alleged that the individual

defendants were conspiring with state actors such that liability would attach

under § 1983.  Accordingly, the court dismisses Zarro's claims against all

10

defendants with the exception of the state defendants and the Colonie PD.

## B.   <u>Monell and the Colonie PD</u>

Next, the court addresses the Colonie PD's contention that the §

1983 claims against it must fail because Zarro's complaint fails to allege

harm caused by a municipal custom or policy.[4]  Finding this argument

dispositive, the court declines to address the Colonie PD's remaining

arguments.

A municipality may be liable under § 1983 only "when execution of a

government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts

the injury."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

694 (1978).  "To establish the existence of a municipal policy or custom,

the plaintiff must allege: (1) the existence of a formal policy officially

endorsed by the municipality; (2) actions taken or decisions made by

municipal officials with final decision making authority, which caused the

alleged violation of plaintiff's civil rights; (3) a practice so persistent and

_____

[4]The court notes that this argument was inexplicably raised for the first time in the Colonie PD's reply brief.  Normally raising such a novel argument in a reply brief would be inappropriate.  *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).  Here, however, the court discerns no prejudice in addressing the argument, as the law on § 1983 claims against municipalities is clear as it relates to this case.

widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006) (internal citation omitted).

In the present instance, Zarro's generalized allegations that he was wrongfully arrested and imprisoned by the Colonie PD due to the Keller incident satisfy none of the above methods of establishing municipal liability.  As such, his claims against the Colonie PD must be dismissed.

**C.**    **Search and Seizure Claim**

Zarro's Fourth Amendment search and seizure claim is stated in his first count, and arises out of the search and seizure of his property and documents by certain state defendants in July and August of 2001.  The court finds that this claim is time barred.

Actions brought pursuant to § 1983 are subject to the general or residual statute of limitations for personal injury actions in the forum state. *See Owens v. Okure*, 488 U.S. 235, 251 (1989).  Accordingly, New York's three year statute of limitations for unspecified personal injury claims

applies to Zarro's claims.  See *id.*;  N.Y. C.P.L.R. § 214(5).  The accrual

date of a § 1983 claim is dictated by federal law.  *See Wallace v. Kato*, 549

U.S. 384, 388 (2007).  § 1983 claims "generally accrue once the plaintiff

knows or has reason to know of the injury which is the basis of his action."

*Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).  In the search and

seizure context, a claim accrues at the time of the search or seizure where,

as here, the claim does not impugn an extant conviction.  *See, e.g.,*

*Wallace*, 549 U.S. at 397 (setting forth accrual rule for claims which do not

impugn a conviction in context of false imprisonment claim); *Spencer v.*

*Connecticut*, 560 F. Supp. 2d 153, 158-59 (D. Conn. 2008) (holding search

or seizure claim accrues at time of search or seizure under *Wallace* where

claim would not impugn extant conviction); *Mallard v. Potenza*, No. 94-CV-

223 (CBA), 2007 WL 4198246, at *3-4 (E.D.N.Y. Nov. 21, 2007) (same).

Here, Zarro clearly knew or had reason to know of the search and

seizure of his property when it occurred.  Nonetheless, he contends that his

search and seizure claim is timely as a "continuing violation" because his

property has not been returned to him.  The court rejects this argument.

The continuing violation doctrine is disfavored within this Circuit, s*ee*

*Sharkey v. Lasmo*, 992 F. Supp. 321, 334 (S.D.N.Y. 1998) (citing cases),

and is generally applied only under circumstances where unlawful conduct or policies continue over a span of time. *See, e.g., Cornwell*, 23 F.3d at 704; *Mallard*, 2007 WL 4198246, at *4 n.3. Zarro alleges no such ongoing conduct or policy in relation to his search and seizure claim, but rather challenges discrete incidents which occurred in July and August of 2001, and from which he suffers continuing effects. However, "a continuing violation cannot be established merely because the [plaintiff] continues to feel the effects of a time-barred ... act." *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999). Accordingly, Zarro's search and seizure claim accrued no later than August 2001. As Zarro's initial complaint in this action was not filed until September 29, 2006, his Fourth Amendment search and seizure claim is untimely.[5]

## D.   False Imprisonment/False Arrest Claim

Zarro's false arrest and false imprisonment claims are stated in his second count, and arise out of allegations that Zarro was arrested and imprisoned in July and August of 2003 due to the Keeler incident. These claims appear to be stated solely against the Colonie PD, which has been

--------------------

[5]To the extent this claim could be construed as a freestanding substantive due process claim for invasion of privacy it is correspondingly time barred.

14

dismissed at Point B above.  Nonetheless, the court addresses these

claims in the interest of thoroughness, and finds them to be time barred.

As with his search and seizure claim, Zarro's claims of false arrest

and false imprisonment under § 1983 are subject to a three year statute of

limitations.  *See Owens*, 488 U.S. at 251.  Where an existing conviction is

not implicated "a false imprisonment [or arrest claim accrues] once the

victim becomes held *pursuant to [legal] process* -when, for example, he is

bound over by a magistrate or arraigned on charges."  *Wallace*, 549 U.S. at

389-90 (emphasis in original).  Thereafter, a claim for malicious

prosecution provides the remedy for continued unlawful detention.  *Id.* at

390.  Here, Zarro's false arrest and imprisonment claims arising out of the

Keeler charges do not impugn an extant conviction.  As such, these claims

accrued on August 23, 2003, when he was brought before the court and

the Keeler charges were adjourned in contemplation of dismissal ("ACD")-

thus subjecting him to legal process.  Contrary to Zarro's contention, the

prosecutor's ability to reinstate the Keeler charges within six months of the

ACD did not delay accrual of the false arrest and imprisonment claims until

February 23, 2004. As *Wallace* establishes, the relevant date is that on

which Zarro was subjected to legal process, not the subsequent date by

15

which the prosecutor needed to renew prosecution.  Accordingly, because Zarro's false arrest and imprisonment claims accrued on August 23, 2003, these claims are time barred.

**E.   Abuse of Process**

To adequately state an abuse of process claim, a plaintiff must allege "three essential elements: (1) regularly issues process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984); *see also Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).  Here, Zarro's complaint repeatedly parrots that "process has been abused."  However, in only two instances has Zarro specifically identified process which was allegedly used against him.  The first relates to "two search warrants [obtained and executed in July and August of 2001] by means of fraudulent affidavits ... and in the absence of authority to do so and in the face of a conflict of interest."  The second is "an arrest warrant faxed to Defendant Friedman from the Town of Colonie Police Department, at Friedman's directions," on July 23, 2003.

The court need not address whether Zarro has adequately stated a claim for abuse of process in regards to these warrants, as it is clear that

16

any such claim is barred by the statute of limitations.  Again, "[f]or § 1983

actions arising in New York, the statute of limitations is three years."

*Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994); *Owens v. Okure*, 488

U.S. 235, 250-51 (1989).  The warrants complained of were executed no

later than July of 2003, which fact Zarro was well aware of.  This action

was filed in September of 2006- more than three years later.  Accordingly,

Zarro's abuse of process claims are time barred and dismissed.

## F.   Denial of Bail; Malicious Prosecution; Substantive Due Process

Zarro's denial of bail claim is asserted in his second count, and

asserts that defendants Anderson and Mullane informed various courts of

the Maine and Keeler incidents in September 2003, September 2004, and

December 2005, in an attempt to prevent Zarro's access to bail in various

judicial proceedings.[6]  Zarro's malicous prosecution claim is stated in count

three, and alleges that the state defendants prosecuted him without

probable cause, statutory authority or jurisdiction for crimes arising out of

his purchase and financing of golf property, of which crimes he was

acquitted in July of 2004.  Finally, Zarro's substantive due process claim is

---

[6]When Zarro was proceeding pro se, the Circuit liberally interpreted this claim to assert causes of action for false imprisonment, abuse of process and a substantive due process violation.

17

asserted in count four, and alleges that the state defendants violated Zarro's right to familial association by making false statements about his wife and father during his trial and sentencing in 2004 and 2006.  These claims must be dismissed.

First, as the state defendants note, "there is no absolute federal constitutional right to bail pending appeal after a conviction in the state courts."  *Finetti v. Harris*, 609 F.2d 594, 597 (2d Cir. 1979).  Nor is there any indication that the state defendants had the ability or authority to "prevent" a court from granting Zarro bail.  Accordingly, Zarro's claims against the state defendants must be dismissed to the extent they arise from his denial of bail.  As this is the only timely claim implicating defendant Friedman, he is correspondingly dismissed as a defendant in this action.

As to the remaining state defendants, each is clearly entitled to prosecutorial immunity in regards to Zarro's denial of bail, malicious prosecution and substantive due process claims.[7]  "It is ... well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution,' ... 'is immune from a civil

---

[7]Additionally, Zarro has insufficiently alleged that defendants Spitzer and Dinallo directly participated in the acts alleged, or were personally involved as supervisors, such that § 1983 liability would adhere.  *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  This is an alternative basis for dismissing these two defendants.

suit for damages under § 1983.'"  *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976)).  "Because the immunity attaches to the official prosecutorial function, *see, e.g., Imbler*, 424 U.S. at 430, 96 S.Ct. 984, and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, *see id.*, the prosecutor has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction[.]'"  *Shmueli*, 424 F.3d at 237 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir.1987)).  "A prosecutor engaging in 'prosecutorial activities intimately associated with the judicial phase of the criminal process' loses 'the absolute immunity he would otherwise enjoy' only if he 'acts without any colorable claim of authority.'"  *Id.* (quoting *Barr*, 810 F.2d at 361).  "Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."  *Id.* (internal citation omitted).

Here, Zarro's complaint presents nothing more than conclusory

allegations that he was prosecuted in the absence of jurisdiction.  Such generalized assertions do not establish that his state prosecution was "without any colorable claim of authority."  Indeed, the very fact of his continuing incarceration establishes exactly the opposite.  Accordingly, the state defendants cannot be liable for making misrepresentations before courts during bail hearings, for malicious prosecution, or for making misstatements about Zarro's family during his trial, as all of these alleged acts occurred within the scope of quintessentially prosecutorial activities. Thus, these claims must be dismissed against the remaining state defendants.[8]

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss are GRANTED; and it is further

**ORDERED** that Zarro's action is dismissed; and it is further

**ORDERED** that any and all of Zarro's outstanding requests are DENIED as moot; and it is further

---

[8]The court notes that the state defendants have also construed Zarro's complaint to allege a state claim for emotional injury.  While Zarro has run with this interpretation, the court does not discern his complaint to state such a claim, and, to the extent it does, the court declines to exert supplemental jurisdiction over it.  *See* 28 U.S.C. § 1367(c)(3).

**ORDERED** that the Clerk of the Court enter judgment and close this

case; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Order

to the parties by regular mail.

**IT IS SO ORDERED.**

September 25, 2009
Albany, New York

_____
United States District Court Judge